No. 60,717

JACKSON TRAK GROUP, INC., by and through its successor corporation, JACKSON JORDAN, INC., *Appellee*, v. MID STATES PORT AUTHORITY, *Appellant*.

(751 P.2d 122)

Opinion filed February 19, 1988.

*Charles W. Harris*, of Curfman, Harris, Stallings & Snow, of Wichita, argued the cause, and *Steven J. Rupp*, of the same firm, *T. L. Green*, of Green and Howland, of Topeka, and *Victor D. Ryerson*, of San Francisco, California, were with him on the briefs for appellant.

*Wyatt A. Hoch*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Mid States Port Authority (Mid States), operator of a short line railroad in northwest Kansas, and Jackson Trak Group, Inc., (Jackson Trak) which constructs and rehabilitates railroad track, entered into three separate contracts to rehabilitate portions of Mid States' lines. All three contracts bound the parties to mandatory arbitration. After notifying Jackson Trak

that its work was defective, Mid States filed an action in the Phillips County District Court for possession of Jackson Trak's equipment. Prior to receiving judicial approval, Mid States seized Jackson Trak's equipment. Jackson Trak then filed an application for mandatory injunction and replevin of property, but specifically reserved the right to determine the issue of defective work in an arbitration proceeding. The Phillips County District Court found that Mid States had followed the contractual procedure when seizing the property, but refused to determine issues subject to arbitration under the contracts. Jackson Trak then initiated a request for arbitration, seeking damages for work performed and for loss of use of its equipment due to Mid States' wrongful seizure. After the selection of the arbitrators, Mid States objected to the arbitrators' power to award damages for "conversion" of Jackson Trak's equipment because that issue had already been decided by the Phillips County District Court. After denying the objection, the arbitrators found for Jackson Trak on all issues and awarded damages. Jackson Trak sought confirmation of the arbitration award in the Sedgwick County District Court. Mid States objected to Jackson Trak's motion and moved to vacate the award for improper seizure of Jackson Trak's equipment. The District Court of Sedgwick County affirmed the arbitration award. Mid States appeals the confirmation order, claiming principally that the arbitrators had no jurisdiction to award damages for the seizure of the equipment because (1) the issue had already been determined by the Phillips County District Court, (2) Jackson Trak's claim was a tort action and not subject to arbitration under the Kansas Uniform Arbitration Act, and (3) venue for confirmation of the award was not proper in Sedgwick County. We affirm, finding that res judicata does not apply; that the claim for wrongful seizure of the equipment sounds in contract, not in tort; and that venue in Sedgwick County was proper.

Mid States Port Authority is a joint port authority created as a public body, organized under the provisions of K.S.A. 12-3401 *et seq.*, with its principal offices in Phillipsburg, Kansas. Mid States was formed by fourteen Kansas counties to acquire, rehabilitate, and operate a short line railroad in northwest Kansas. Jackson Trak Group, Inc., was a Delaware corporation engaged in the

business of railroad track construction and rehabilitation. On July 29, 1986, Jackson Trak merged with its parent company, Jackson Jordan, Inc.

In 1984, Mid States acquired over 400 miles of railroad track in northwest Kansas and eastern Colorado from the bankruptcy estate of the Chicago, Rock Island and Pacific Railroad. On July 18, 1984, Mid States contracted with Jackson Trak to perform track rehabilitation work. Additional contracts were executed on February 1, 1985, and February 19, 1985. All three contracts contained mandatory arbitration provisions stating:

"All claims, disputes and other matters in question between Owner [Mid States] and Contractor [Jackson Trak] arising out of, or relating to the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining subject to the limitations of this Article 00716."

Article 00716, Section 16.5 continues:

"The award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and will not be subject to modification or appeal except to the extent permitted by Section 10 and 11 of the Federal Arbitration Act (9 U.S.C. §§ 10, 11)."

After Jackson had worked nearly a year on the project, Mid States, claiming that Jackson had performed defective work, issued a stop work order. Ignoring the mandatory arbitration provision in the contract, Mid States filed a petition in Phillips County District Court on September 20, 1985. Mid States alleged that Jackson Trak's work was defective and, to mitigate its damages, requested possession of Jackson Trak's tools and equipment pursuant to section 13.14 of the contract.

Without judicial approval, on September 26, 1985, Mid States seized eleven pieces of Jackson Trak's equipment worth over $600,000, pursuant to section 13.14 of the original contract. Specifically, the section provided:

"13.14 OWNER MAY CORRECT DEFECTIVE WORK. If contractor fails within a reasonable time after written notice of ENGINEER to proceed to correct and to correct defective Work or to remove and replace rejected Work as required by ENGINEER in accordance with paragraph 00713.11, or if CONTRACTOR fails to perform the work in accordance with the Contract Documents (including any requirements of the Progress schedule), OWNER may, after seven days' written notice to CONTRACTOR, correct and remedy any such deficiency. In exercising his rights under this paragraph OWNER shall proceed expeditiously.

To the extent necessary to complete corrective and remedial action, OWNER may exclude CONTRACTOR from all or part of the site, take possession of all or part of the Work, and suspend CONTRACTOR'S SERVICES RELATED THERETO, TAKE POSSESSION OF CONTRACTOR'S tools, appliances, construction equipment stored at the site or for which owner has paid CONTRACTOR but which are stored elsewhere. CONTRACTOR shall allow OWNER, OWNER'S representatives, agents, and employees such access to the site as may be necessary to enable OWNER to exercise his rights under this paragraph. All direct and indirect costs of OWNER in exercising such rights shall be charged against CONTRACTOR in an amount verified by ENGINEER, and a Change Order shall be issued incorporating the necessary revisions in the Contract Documents and a reduction in the Contract Price. Such direct and indirect costs shall include additional professional services required and all costs of repair and replacement of work of others destroyed or damaged by correction, removal or replacement of CONTRACTOR'S defective work. CONTRACTOR shall not be allowed an extension of the Contract Time because of any delay in performance of the Work attributable to the exercise by OWNER of OWNER'S rights hereunder."

On October 17, 1985, Jackson Trak filed an "Application for Mandatory Injunction and Replevin of Property," stating:

"3. On September 26, 1985, plaintiff Mid States wrongfully, and without Jackson's consent, took possession of this equipment and has prohibited its purposeful use by Jackson Trak Group. Mid States' exercise of dominion and control over these machines constitutes conversion without just excuse at law or by contract.

"4. Mid States has wrongfully detained Jackson's railroad equipment since September 26, 1985, and continues to wrongfully detain the equipment.

"5. Jackson Trak Group does not seek from this court an award of damages for Mid States' wrongful conversion, but specifically reserves the right to assert such a claim in the arbitration pending before the American Arbitration Association."

On October 24, 1985, Jackson Trak filed a "Motion to Compel Arbitration and Stay Proceeding" in the Phillips County proceeding.

On November 6, 1985, the district court heard Jackson Trak's motion to regain possession of its equipment. The district judge limited the issue to whether Mid States complied with the notice provision of section 13.14 of the contract when seizing Jackson Trak's equipment. On November 12, the district judge found that Mid States' seizure of the equipment was in compliance with the contracts, and refused to hear the contract dispute because that issue was subject to arbitration.

Jackson Trak appealed. At oral argument, Mid States an-

nounced that the day prior to oral argument, it had returned nine of the pieces of Jackson Trak's equipment subject to the appeal and was holding the other two pursuant to a different authority. In an unpublished opinion, Case No. 58,866, filed on May 22, 1986, the Court of Appeals dismissed the appeal as moot and this court denied Jackson Trak's petition for review.

Meanwhile, on January 13, 1986, Jackson Trak, seeking damages arising from Mid States' wrongful seizure of its equipment and for work performed under the contracts, initiated an arbitration proceeding with the American Arbitration Association. After selection of the three arbitrators, the parties were unable to agree in which county to hold the arbitration hearing. The arbitrators selected Wichita, Sedgwick County, Kansas, as the site for the hearings.

Mid States objected to the power of the arbitrators to consider the issue of the "conversion" of Jackson Trak's equipment, claiming that the issue had already been determined in the district court proceeding. The arbitrators found that the District Court of Phillips County had not reached the substantive issue as to the quality of the work performed under the contract and overruled the objection. On January 13, 1987, after eleven days of hearings occurring between July 8 and December 3, 1986, in Sedgwick County, Kansas, the arbitrators awarded Jackson Trak:

"I.  For work performed, a net amount of EIGHTY SEVEN THOUSAND FIVE HUNDRED SIXTY-NINE DOLLARS AND THIRTY CENTS ($87,569.30); plus 10% per annum simple interest from October 1, 1985 until paid; and

"II.  For improper seizure of the track equipment, an amount of ONE HUNDRED SEVENTY ONE THOUSAND TWO HUNDRED FIFTY ONE DOLLARS AND NO CENTS ($171,251.00); plus ONE HUNDRED DOLLARS ($100.00) per day for the tie crane from October 20, 1986 until it is returned to JACKSON TRAK GROUP, INC.; plus 10% per annum simple interest from January 23, 1987 until paid; and

"III.  For equipment repairs, an amount of ELEVEN THOUSAND NINE HUNDRED TWENTY SIX DOLLARS AND NO CENTS ($11,926.00); plus 10% per annum simple interest from January 23, 1987 until paid."

Jackson Trak sought confirmation of the arbitration award in Sedgwick County District Court pursuant to K.S.A. 5-411 of the Kansas Uniform Arbitration Act. Mid States, claiming the arbitrators exceeded their powers, filed an objection to the confir-

mation and moved to vacate that portion awarded for the improper seizure of Jackson Trak's equipment, pursuant to K.S.A. 5-412(a)(3). Mid States alleged (1) that venue was improper in Sedgwick County; (2) that the arbitrators' award for the improper seizure of the equipment was barred by res judicata due to the prior Phillips County proceeding; (3) that Jackson Trak had waived arbitration by submitting part of an arbitrable matter to the Phillips County District Court; (4) that K.S.A. 1987 Supp. 5-401 specifically excludes tort claims from arbitration; (5) that Mid States, as a state body, could claim sovereign immunity and therefore, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1982), which provides for arbitration of tort claims, could not be applied to Mid States; and (6) that Mid States was insulated from liability for the improper seizure award by the discretionary function exception to the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* The Sedgwick County District Court judge ruled that Mid States had failed to carry the burden necessary to vacate the arbitration award and affirmed the arbitrators' award. Mid States appeals.

VENUE

Mid States contends Sedgwick County was not the proper venue for confirmation of the arbitration award. Mid States argues that venue is determined by K.S.A. 1987 Supp. 60-606, which requires:

"[A]ny action brought against a public utility, common carrier or transportation system for any liability or penalty or forfeiture, may be brought in any county into or through which such public utility, common carrier or transportation system operates regularly."

Mid States' representation that Jackson Trak's claims constitute a civil action filed against a public utility, common carrier, or transportation system is without merit. Further, even if Mid States is a state or other governmental agency, it may lawfully enter into valid contracts for compulsory arbitration of contractual disputes unless prohibited by statute. *Evans Electrical Constr. Co. v. University of Kansas Med. Center*, 230 Kan. 298, 634 P.2d 1079 (1981). There are no statutes which prohibit Mid States from entering into a contract that provides for compulsory arbitration.

Under Article 00716 of the original contract to arbitrate, Mid States agreed that it would abide by the Construction Industry

Arbitration Rules of the American Arbitration Association (AAA) concerning all claims and disputes. Because the parties could not agree on the hearing locale, the AAA Construction Industry Rules apply.

AAA Construction Industry Rule 11 provides that, if the parties cannot agree upon a hearing locale, the AAA shall have the power to determine the locale and its decision shall be final and binding. Since the AAA arbitrators determined the hearings would be held in Wichita, Jackson Trak's initial application for the order confirming the arbitration award had to be made in Sedgwick County. The district court did not err by determining that Sedgwick County was the proper venue for the confirmation hearing.

SCOPE OF REVIEW

Initially, we must determine the scope of appellate review of an arbitration award. Generally, where the parties have agreed to be bound to a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly made. Nothing in the award relating to the merits of the controversy, even though incorrectly decided, is grounds for setting aside the award in the absence of fraud, misconduct, or other valid objections. Further, where an arbitration award made under the Kansas Uniform Arbitration Act is attacked by one of the parties, it is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrators. *Foley Co. v. Grindsted Products, Inc.*, 233 Kan. 339, 350, 662 P.2d 1254 (1983) (quoting *Evans Electrical Constr. Co. v. University of Kansas Med. Center*, 230 Kan. 298). Ordinarily, an arbitrator's award will not be subject to judicial revision unless such award is tainted or based on an irrational interpretation of the contract. *O-S Corp. v. Samuel A. Kroll, Inc.*, 29 Md. App. 406, 348 A.2d 870 (1975), *cert. denied* 277 Md. 740 (1976), *quoted in Foley Co. v. Grindsted Products, Inc.*, 233 Kan. at 348.

Kansas statutes provide: "Upon application of a party, the court shall confirm an award, unless . . . grounds are urged for vacating or modifying or correcting the award." K.S.A. 5-411. Further, an arbitrator's award is presumptively valid unless one of the specific grounds in K.S.A. 5-412 can be proved. Mid States

argues that the district court erred in confirming the arbitration award and should have vacated it because the arbitrators exceeded their powers, K.S.A. 5-412(a)(3). Mid States claims the arbitrators exceeded their powers because (1) they denied res judicata effect to the Phillips County proceeding and (2) they awarded damages for a tort in violation of K.S.A. 1987 Supp. 5-401.

## RES JUDICATA EFFECT OF THE PHILLIPS COUNTY DISTRICT COURT PROCEEDING

Mid States contends that the Phillips County court proceeding produced a decision on the merits in favor of Mid States which, under the doctrine of res judicata or issue preclusion, prohibited a later arbitration proceeding on the issue of damages for wrongful seizure of Jackson Trak's equipment.

The doctrine of res judicata has two aspects: claim preclusion and issue preclusion. Claim preclusion prevents parties from relitigating a cause of action that has been finally adjudicated. It is founded on the principle that the party, or some other party in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *In re Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985) (citing *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 [1971]). An issue is res judicata when four conditions concur: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. *In re Estate of Reed*, 236 Kan. at 519 (citing *Kumberg v. Kumberg*, 232 Kan. 692, Syl. ¶ 6, 659 P.2d 823 (1983).

Res judicata also includes issue preclusion or collateral estoppel, which prevents relitigation in a different claim of issues conclusively determined in a prior action. *Penachio v. Walker*, 207 Kan. at 57. Under Kansas law, collateral estoppel may be invoked where the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment. *Bud Jennings Carpets &*

*Draperies, Inc. v. Greenhouse*, 210 Kan. 92, 96, 499 P.2d 1096 (1972).

We note, however, that the doctrine of res judicata is held not to apply to issues raised in the previous case which were not decided by the court or jury. Hence, the doctrine of res judicata does not preclude relitigation of an issue raised by the pleadings in the prior action, but not considered either by stipulation of the parties or otherwise. More importantly, a judgment is not res judicata as to any matters which a court expressly refused to determine, and which it reserved for future consideration, or which it directed to be litigated in another forum or in another action. *American Home Assur. v. Pacific Indem. Co., Inc.*, 672 F. Supp. 495 (D. Kan. 1987); 46 Am. Jur. 2d, Judgments § 419, p. 588-89.

Mid States' claim that the Phillips County District Court proceeding necessarily or implicitly decided the issue of damages for wrongful seizure of the equipment and that that proceeding irreparably prejudiced Jackson Trak's right to recover damages for wrongful seizure in the arbitration proceeding is without merit. First, Jackson Trak's action in the Phillips County District Court was an action for a mandatory injunction. The application specifically stated:

"Jackson Trak Group does not seek from this court an award of damages for Mid States' wrongful conversion, but specifically reserves the right to assert such a claim in the arbitration pending before the American Arbitration Association."

Therefore, the Phillips County proceeding was limited to a decision on whether an injunction should be granted to Jackson Trak based on Mid States' compliance with the notice provisions of the contract. The district judge specifically stated that he was not ruling on the substantive issue of breach of contract. Jackson Trak's subsequent appeal also focused on the denial of the injunction based purely on Mid States' compliance with notice and other procedural provisions of the section of the contract dealing with seizure of equipment.

Mid States cites for support of this claim *Development Co. v. Arbitration Assoc.*, 48 N.C. App. 548, 269 S.E.2d 685 (1980), a case involving a breach of contract action in which a subcontractor claimed a bonus under a construction contract. There, the Court of Appeals of North Carolina upheld the trial court's ruling

that an arbitration proceeding relating to payment of the bonus was barred because the same issue was asserted and fully litigated in a prior court proceeding.

We have no quarrel with Mid States' argument that the res judicata effect of prior litigation with respect to a demand for arbitration is a matter for judicial determination. However, the facts of this case are completely distinguishable from those of the North Carolina case. In that case, all substantive issues relating to the original breach of contract action and payment of the bonus had been raised and fully litigated in a previous district court proceeding. Here, the substantive issue of whether Jackson Trak breached its contract with Mid States was never decided by the district court.

Where the court specifically refuses to consider certain questions and reserves the litigants' rights to have those issues determined in a later proceeding, res judicata does not preclude litigation of issues that were not considered or decided by the court. See *Meenen v. Meenen*, 180 Kan. 779, 792, 308 P.2d 158 (1957) (where the court reserved matters relating to accounting and distribution of property "so as to conserve the rights of the parties," no res judicata effect would be given to the issues not considered or decided by the first journal entry); *Gillet v. Powell*, 174 Kan. 88, 95, 254 P.2d 258 (1953) (no res judicata effect where parties asked the court to take issue of partition of surface mineral interest out of the judgment in a partition action).

Further, a suit for an injunction is a separate cause of action from a suit for damages, and therefore res judicata does not preclude a subsequent action for damages. See *Thompson-Hayward Chem. Co. v. Cyprus Mines Corp.*, 8 Kan. App. 2d 487, 660 P.2d 973 (1983). Here, in the injunction action, the Phillips County District Court properly refused to address the contractual issue of damages for wrongful seizure.

The Sedgwick County District Court correctly found that, since no prior judgment on the merits was rendered in the Phillips County District Court, the arbitration proceeding on the issue of damages for wrongful seizure of Jackson Trak's equipment was not barred by the doctrines of res judicata or collateral estoppel.

## WAIVER OF ARBITRATION

Mid States next contends that Jackson Trak waived its right to arbitration by submitting part of an arbitrable matter to the Phillips County District Court. It is the well established rule in Kansas that waiver can only result from the intentional relinquishment of a known right. *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117, 542 P.2d 297 (1975).

Any conduct of a party inconsistent with the treatment of an arbitration provision as in effect, or any conduct which a court might reasonably construe as showing lack of intent to utilize an arbitration provision, may amount to a waiver. A right to arbitration may be waived by denying that there is an issue to arbitrate, by failing to perform the preliminary steps preceding arbitration, or by being unjustifiably slow in seeking arbitration. 5 Am. Jur. 2d, Arbitration and Award § 51, p. 557. Mid States cites a plethora of cases for the proposition that waiver of the right to arbitrate may be found by a single inconsistent act performed by the waiving party. As the district court found, however, all those cases are distinguishable.

Here, the Phillips County proceeding was limited to procedural issues relating to the injunction application. Jackson Trak's application for the injunction explicitly reserved its right to arbitrate the issues of damages for wrongful seizure. More importantly, it was Mid States who initiated the action for possession in the Phillips County District Court and forced Jackson Trak to litigate whether Mid States had complied with the contract when it took possession of the equipment. Nothing in the record shows that Jackson Trak committed any act which indicated intent to waive its right to arbitration.

Further, both parties contracted to resolve their disputes under the Construction Industry Rules of the American Arbitration Association. AAA rule 47(a) states as follows:

"No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."

In sum, the district court did not err in holding that Jackson Trak did not waive its right to arbitrate.

## VIOLATION OF K.S.A. 5-401

Mid States contends that the arbitrators exceeded their powers by awarding damages for loss of use of equipment wrongfully

seized by Mid States, a tort claim, because an award of a tort claim in arbitration violates K.S.A. 1987 Supp. 5-401. This statute provides as follows regarding the validity of agreements to arbitrate future tort claims:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a contract of insurance or a contract between employers and employees or between their respective representatives, to submit to arbitration any controversy, *other than a claim in tort,* thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis supplied.)

Initially we note that the contract in this case does not provide for arbitration of tort claims in violation of 5-401. Rather, the contract provided for arbitration of "all claims, disputes and other matters *arising out of or relating to the contract.*" Mid States argues, however, that the basis of Jackson Trak's claim was the common-law tort of conversion of the equipment. We disagree. The claim is firmly grounded in contract. Judge Ron Rogg recognized this when he found that Jackson Trak proceeded on two theories, "one contract and one perhaps tort." Jackson Trak referred to Mid States' action both as "conversion" and "wrongful seizure" under the contract. In its demand for arbitration, Jackson Trak prayed for damages arising from breach of contract and conversion of the seized equipment.

In order to determine whether Mid States had the right to seize the equipment, the arbitrators had to determine if Jackson Trak's work was defective under the contract. Ostensibly, the arbitrators determined that the work was not defective and that Mid States breached the contract by wrongfully seizing the equipment. Under the contract theory, damages for wrongful seizure, based on Mid States' breach of the contract, could be awarded as contract damages. Damages recoverable for breach of contract include consequential damages which arise, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. *Kansas State Bank v. Overseas Motosport, Inc.,* 222 Kan. 26, 563 P.2d 414 (1977). The important aspect of the recovery of such consequential or special damages under a breach of contract theory is the element of

foreseeability. 22 Am. Jur. 2d, Damages §§ 56, 57. In this case, it is certainly foreseeable that the parties would have contemplated damages for loss of use of the equipment if it were wrongfully seized by Mid States and held over a period of time.

Mid States' other arguments regarding immunity under the Kansas Tort Claims Act, while theoretically interesting, are not relevant. First of all, we are not dealing with a "tort." More significantly, this appeal involves a motion to confirm and/or vacate an *arbitration award*. While we recognize the policy behind immunity afforded by the Kansas Tort Claims Act, we also recognize that the legislature's enactment of the Kansas Uniform Arbitration Act codified public policy in favor of arbitration of disputes. Here, both parties bargained at arm's length for arbitration. Mid States has failed to show that the contract requiring mandatory arbitration was illegal or that the arbitrators exceeded their powers in making the award. The decision of the district court is affirmed.